## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Crystal Roberts, Individually and on Behalf of All Others Similarly Situated,** | Case No.: _____ |
| *Plaintiff*, | |
| v. | **CLASS ACTION COMPLAINT** |
| **EZRICARE, LLC; and EZRIRX, LLC** | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

Plaintiff Crystal Roberts ("Plaintiff"), on behalf of herself and all others similarly situated, files this Class Action Complaint ("CAC") against Defendants EzriCare, LLC, and EzriRx, LLC (Collectively "EzriCare") (Collectively "Defendants") and in support, states the following:

### NATURE OF THE SUIT

1.       This suit arises out of Plaintiff's purchase and subsequent use of "EzriCare Artificial Tears Lubricant Eye Drops (carboxymethylcellulose sodium) 10 mg in 1 mL, ½ fl. oz. (15 ml) bottle" ("Product" or "Products"). Defendants executed, controlled, or orchestrated every aspect of the Products' inception, design, manufacture, importation, packaging, marketing, distribution, and eventual sale. Defendant EzriCare, LLC has its principal place of business at 1525 Prospect St, Ste 204 Lakewood, NJ, 08701. Defendant EzriRx, LLC has its principal place of business at 1525 Prospect St Ste 204 Lakewood, NJ, 08701.

2.       This is a class action lawsuit by Plaintiff on behalf of herself and all others similarly situated who purchased Defendants' EzriCare over-the-counter Product, which was sold to

consumers across the United States.[1] The above-described group of persons who purchased Defendant's Product is to be referred to as Putative Class hereinafter.

3.      In February of 2023, the Products were recalled due to bacterial contamination of the Products.[2]

4.      The Product purchased by Plaintiff and Putative Class members was adulterated and contaminated with a "very rare strain of Pseudomonas aeruginosa that hasn't been seen in the U.S. before."[3]

5.      The presence of the Pseudomonas Aeruginosa bacteria ("Bacteria" or "Bacterium") in the Product is due to Defendant EzriCare's violation(s) of Current Good Manufacturing Processes ("CGMPs"), as identified by the Food and Drug Administration.[4]

6.      The Product is designed to lubricate the user's eyes.[5]

7.      The Product is designed to be safe for use in the human eye. Unfortunately, due to the presence of the Bacteria, the Product is not safe for human use.

8.      As stated before, the Product is dangerous because it has been contaminated by Bacteria.[6]

---

[1] https://www.drugwatch.com/drugs/ezricare-artificial-tears/recall/#:~:text=On%20Feb.,relief%2C%20according%20to%20CBS%20News (last accessed November 13, 2023).

[2] https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination

[3] https://www.drugwatch.com/drugs/ezricare-artificial-tears/recall/#:~:text=On%20Feb.,relief%2C%20according%20to%20CBS%20News

[4] https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination

[5] https://health.ucdavis.edu/news/headlines/fda-recalls-3-brands-of-eye-drops-what-patients-need-to-know-/2023/03

[6] *Id.*

9.      The Bacteria contained within the Product is severely harmful, as it can, and often does, cause blindness or death.[7]

10.     This is particularly concerning because the Product is intended to be used directly in the eyes of the user, thus bypassing many of the human body's natural safeguards.[8] Defendants knew or otherwise should have known that such ocular use would pose a special risk to consumers as the immune systems of the users would be bypassed and additionally, the blindness-inducing Bacteria would be doused into the eyes of the user.

11.     Plaintiff purchased the Product because of the Product's alleged safe nature, and such assertions were put forth by Defendants.

12.     Unfortunately, the Product is unsafe given the above facts.

13.     Plaintiff and Putative Class members have been deprived of their benefit of the bargain as they intended to purchase safe, healthy, and contaminant free Products.

14.     Plaintiff brings this action because of Defendants' fraud, false marketing, false advertising, breach of contract, breach of warranty, and breaches of state law consumer protection statutes.

15.     Collectively, Defendant EzriCare is a combination of pharmaceutical companies (EzriCare, LLC and EzriRX, LLC) that control the production, importation, packaging, marketing, distribution, and sale of the Products.

16.     Through its own marketing, as demonstrated above, Defendants are seeking out consumers who are in vulnerable positions, given the consumer's need for medicines and supplements related to their eye dryness and accompanying issues therein.

---

[7] https://health.ucdavis.edu/news/headlines/fda-recalls-3-brands-of-eye-drops-what-patients-need-to-know-/2023/03
[8] *Id.*

## JURISDICTION AND VENUE

17.     This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class Members.

18.     This Court has Personal Jurisdiction over Defendant EzriCare, LLC as this Defendant is incorporated in New Jersey. Defendant is a citizen of New Jersey as it is a corporation incorporated in New Jersey. Defendant has its principal place of business at 1525 Prospect St, Ste 204 Lakewood, NJ, 08701.

19.     This Court has Personal Jurisdiction over Defendant EzriRx, because Defendant has sufficient minimal contacts with this District, and Defendant EzriRx has its principal place of business in this District. Defendant EzriRx, LLC has purposefully availed itself to this Jurisdiction through their marketing, sale, advertising, and promotion of the Product throughout this Jurisdiction. Defendant EzriRx, LLC has its principal place of business located at Defendant has its principal place of business at 1525 Prospect St Ste 204 Lakewood, NJ, 08701. By definition, Defendant is citizen of New Jersey.

20.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendants transact their business in this District, and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

## PARTIES

### A.        Plaintiff

21.        Plaintiff is a citizen and resident of Sylvania, Georgia. Sylvania is in Screven County, Georgia.

22.        In or around June 2022, Plaintiff purchased Defendants' Product from her local Walmart in Statesboro, Georgia.

23.        Plaintiff purchased the Product because she believed it to be safe due to the Product being placed in the marketplace and the packaging and labeling of the Product.

24.        If the truly dangerous, and possibly deadly, nature of the Product was known to Plaintiff, Plaintiff would not have purchased Defendants' Product, or would have paid significantly less for the Product.

25.        Unfortunately, Plaintiff was suffering from ocular dryness, irritation, and other similar pain, and, like all other Putative Class members, purchased the Product to relieve her eye irritation, eye discomfort, or eye dryness.

26.        Plaintiff, along with many others, has spent countless dollars on these Products while expecting to be safely relieved of ocular discomfort. Defendants' Product did not safely resolve Plaintiff's ocular discomfort, dryness, or other irritation, as was promised by Defendants.[9] As such, Plaintiff has been deprived of her benefit of the bargain.

---

[9] "Artificial Tears (carboxymethylcellulose sodium) Lubricant Eye Drops, 10 mg in 1 mL, ½ fl oz (15 ml) bottle are used as a protectant against further irritation or to relieve dryness of the eye for the temporary relief of discomfort due to minor irritations of the eye, or to exposure to wind or sun." https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/global-pharma-healthcare-issues-voluntary-nationwide-recall-artificial-tears-lubricant-eye-drops-due

27.     In fact, Plaintiff suffered personal injury and was rushed to the hospital via ambulance because of Defendant's unsafe Product. Plaintiff has suffered permanent damage due to Defendant's Product.

### B.      Defendants

28.     Defendant EzriCare LLC is, and at all times relevant to this action was, a New Jersey Limited Liability Company with its principal place of business located at 1525 Prospect Street, Suite 204, Lakewood, NJ 08701. "EzriCare" is a trademark registered and licensed to Defendant EzriRx, LLC with the serial number 90629770.[10] EzriCare LLC markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears product at issue in this litigation.

29.     Defendant EzriRx, LLC is, and at all times relevant to this action was, a Limited Liability Company incorporated under the laws of Delaware with its principal place of business located at 1525 Prospect St Ste 204 Lakewood, NJ, 08701.[11] EzriRX uses the trademarked name "EzriCare" to brand certain products that it sells, including the Product at issue here. EzriRx, LLC markets, advertises, labels, distributes, and sells the EzriCare Artificial Tears Product at issue in this litigation.

30.     At all times relevant to this litigation, all Defendants did business in New Jersey as manufacturers, distributers, packagers, marketers, suppliers, and/or sellers of the EzriCare Artificial Tears product at issue in this litigation.

31.     At all pertinent times, Defendants EzriRX, and EzriCare were engaged in the research, development, manufacture, design, testing, packaging, labeling, sale, and marketing of

---

[10]https://tsdr.uspto.gov/documentviewer?caseId=sn90629770&docId=ORC20220313211655&linkId=2#docIndex=1&page=1
[11] EzriRX also has its address listed as 1525 Prospect Street., Suite 203, Lakewood, New Jersey 08701.

the Products and introduced such products into interstate commerce with knowledge and intent that such products be sold in the State of New Jersey, and throughout the United States.

32.    At all times material hereto, Defendants EzriRX, and EzriCare either directly or indirectly controlled the development, testing, assembly, manufacturing, packaging, labeling, preparation, distribution, marketing, supplying, and/or selling of the Products. All Defendants placed the defective and contaminated Products into the stream of interstate commerce.

33.    Defendant has repeatedly touted the effectiveness and safety of the Products.[12]

34.    See further below[13]:

(space intentionally left blank)





---

[12] https://ezricare.com/ (last accessed November 13, 2023).
[13] Id.

## FACTUAL ALLEGATIONS

*The Products and The Bacteria*

35.     The NDC, or National Drug Code, number for the Products is 79503-101-15.[14]

36.     The Products were designed, marketed, and sold by Defendants beginning in or around November of 2020.[15]

37.     The Products intended purpose and use as: "for use as a protectant against further irritation or to relieve dryness of the eye" and "for the temporary relief of discomfort due to minor irritations of the eye, or to exposure to wind or sun".[16]

38.     The Bacteria contained within the Products is a well-known and more than century old risk, having been discovered in 1882.[17] In sum, the Bacteria has been a risk for over 140 years.

39.     Further, "*P. aeruginosa* is a common organism in the soil and in water and it can also be found on plants and animals."[18]

40.     In general, the Bacteria "is an important soil bacterium that is capable of breaking down polycyclic aromatic hydrocarbons, but is often also detected in water-reservoirs polluted by animals and humans, such as sewage and sinks inside and outside of hospitals."[19]

41.     Defendants knew or should have known that this Bacteria was ever present and needed to be eradicated from any source of water and should have ensured such was done. But

---

[14] https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=ac1ea23c-f1c6-418f-921e-58553ee919cb
[15] Id.
[16] Id.
[17] http://clsjournal.ascls.org/content/24/1/41#:~:text=In%201882%2C%20Carle%20Gessard%20(1850,bacilli%20that%20had%20polar%20flagella.
[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7273324/
[19] Id.

instead, through its actions or inactions, Defendants EzriCare chose to allow the Bacteria to exist in its Products.

42.    The Bacteria is also notorious for its resistance to antibiotics, and has been noted as an extremely dangerous pathogen, often harming those who are already unhealthy.[20]

43.    In summary: "*P. aeruginosa* is often resistant to many classes of antibiotics and therapeutic agents, and this makes it problematic during infection as it can be difficult to treat. It is often termed an 'opportunistic' pathogen because it rarely infects healthy individuals. Clinically, the primary risk is for patients with compromised immune systems including those with cystic fibrosis (CF), cancer, AIDS, indwelling medical devices, burn and eye injuries, and non-healing diabetic wounds."[21]

44.    As seen above, the Bacteria's impact on those with burn and eye injuries renders the Bacteria a high risk, uncurable, and untreatable pathogen that will particularly injure those who need eye lubrication the most. Defendants knew or should have known of such a particular danger and should have adequately combated this threat.

45.    To be direct: "Antimicrobial resistance (AMR) is a significant problem in some clinical strains. AMR in *P. aeruginosa* can occur by (a) acquisition of resistance genes via horizontal gene transfer; or (b) mutations in genes already present in the genome, leading to up-regulation of efflux pumps, beta-lactamase's or changes in porins. Carbapenemase-resistant *P. aeruginosa* strains are amongst the critical pathogens listed on the WHO priority pathogens' list."[22]

46.    Moreover, regarding other diseases, particularly Cystic Fibrosis ("CF"): "*P. aeruginosa* is capable of causing disease in a variety of hosts including plants, nematodes, insects

---

[20] Id.

[21] Id.

[22] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7273324/

and mammals. In humans, it is particularly problematic in patients with CF. In CF lungs, infection often occurs early in life and despite aggressive treatment with antibiotics, infection results in a progressive loss of lung function and eventually death."[23]

47.    In sum, the Bacteria causes many sicknesses and is a well-known and long-standing risk. For over 140 years, this Bacteria has been known and caused all sorts of harm to individuals. It is particularly troubling that Defendants decided to not ensure that such a dangerous Bacteria would be eradicated from, or prevented from contaminating, the Products.

*The Recall of the Products*

48.    On January 24th, 2023, Defendants EzriCare issued a statement, providing details that the Center for Disease Control had begun investigating their Products.[24]

49.    On February 1st, 2023, Defendants issued a statement, acknowledging that the Bacteria had been found in their Products.[25] On the same day, Defendants' Products were recalled.[26]

50.    The Recall was due to Defendants' failure to ensure the safety of its Products.[27]

51.    On February 2nd, 2023, the Federal Drug Administration ("FDA") proffered a warning regarding the Products, due to the Bacteria contained within the Product.[28]

---

[23] Id.
[24] https://ezricare-info.com/
[25] Id.
[26] Id.
[27] https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-ezricare-artificial-tears-due-potential-contamination#:~:text=Safety%20and%20Availability-,FDA%20warns%20consumers%20not%20to%20purchase%20or%20use,Tears%20due%20to%20potential%20contamination&text=Update%20%5B8%2F25%2F2023,off%2Dlabel%20use%20in%20animals.
[28] Id.

52.    And, further, the factory in which Defendants' Products were produced was put on an import notice, in which the Products therein were banned from entering the United States.[29]

53.    Reasonable alternatives to the factory or production style that produced the Products exist and did exist at the time of the Recall.[30]

*Plaintiff's Experience with the Products and the Bacteria*

54.    Plaintiff purchased Defendants' Product at her local Walmart store in Statesboro, Georgia in or around June of 2022.

55.    Plaintiff purchased the Product because she believed it to be safe, given Defendants' marketing, advertising, labeling, and sale.

56.    Plaintiff and Putative Class members would not have purchased this Product, or would have paid significantly less, had they known of the truly dangerous nature of Defendants' Product.

57.    Plaintiff and Putative Class members were deprived of their benefit of the bargain and was monetarily harmed by Defendants' inoperable, unusable, nonconforming, and dangerous Product.

58.    In addition to monetary loss, Plaintiff suffered permanent physical injury due to this Product, having lost vision.

## **CLASS ALLEGATIONS**

59.    Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rule 23(a) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks class certification on behalf of the class defined as follows ("the Nationwide Class").

---

[29] Id.
[30] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10236422/

**Nationwide Class:** All persons in the United States who purchased Products produced and or otherwise sold by Defendants from November 2020 to the Present for personal use.

60.    Excluded from the Class are any Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

61.    The Nationwide Class shall be referred to as the "Class."

62.    Proposed Members of said Class will be referred to as "Class Members", or otherwise referenced as "members of the Class."

63.    **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers who have been damaged by Defendants' conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff at this time.

64.    **Typicality:** Plaintiff's claims are typical to those of all Class Members because members of the Class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

65.    **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class Members. The claims of Plaintiff and all prospective Class Members involve the same alleged defect. These common legal and factual questions include the following:

a.    Whether Defendants' Product is defective and/or unsafe;

b.    Whether Defendants' owed a duty of care to Plaintiff and the Class;

c.  Whether Defendants knew or should have known that the Product was defective and/or otherwise unsafe;

d.  Whether Defendants wrongfully represent, and continue to represent, that their Product is operable, thus granting ocular pain, dryness, itchiness, or other similar relief;

e.  Whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive consumers;

f.  Whether the alleged conduct constitutes violations of the laws asserted;

g.  Whether Defendants' alleged conduct violates public policy;

h.  Whether Defendants' representations in advertising, warranties, packaging, and labeling are false, deceptive, and misleading;

i.  Whether those representations are likely to deceive a reasonable consumer;

j.  Whether a reasonable consumer would consider the risk of the Product not working as intended, given the danger of contamination therein;

k.  Whether Defendants were unjustly enriched as a result of their marketing, advertising, and sale of the Product;

l.  Whether Defendants breached their express warranties;

m.  Whether Defendants breached their implied warranties;

n.  Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

o.  Whether Plaintiff and the Class Members are entitled to damages and/or restitution and the proper measure of that loss; and

p.  Whether an injunction is necessary to prevent Defendants from continuing to market and sell the Product.

66.  **Adequacy:** Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

67.  **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiff and the individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

68.  The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

69.  Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent

Defendants from engaging in the acts described above, such as continuing to market and sell Products that may be defective. Further, Plaintiff seeks for Defendants to provide a full refund of the purchase price of the Products to Plaintiff and the Class Members.

70.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and the Class Members. Unless a Class-wide injunction is issued, Defendants may continue to commit the violations alleged and the members of the Class and the general public will continue to be misled and placed in harms' way.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New Jersey's Consumer Fraud Act (N.J. Stat. § 56:8-2 et seq.**
**(On Behalf of Plaintiff and the Class)**

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

72.     New Jersey's Consumer Fraud Act ("NJCFA") section 56:8-2 states: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  N.J. Stat. § 56:8-2.

73.     Defendants violated the NJCFA by misrepresenting the sterile, uncontaminated, and safe nature of the Products; that is, the Products are not sterile, are contaminated with a dangerous and drug-resistant bacterium and are not safe.

74.     In the course of business, Defendants made affirmative misrepresentations that conveyed to Plaintiff and the general public that the Products were safe and suitable as a treatment for dry eyes and the symptoms of dry eyes.

75.     Defendants, however, concealed and suppressed material facts concerning the Product, including that the Product is unsafe and contaminated with a dangerous and drug-resistant bacterium that can cause permanent damage to the eye and vision.

76.     Plaintiff and Class Members had no way of discerning that Defendants' representations were false and misleading because the labeling did not disclose the presence of the Bacteria, and Plaintiff and Class members had no reason to otherwise suspect that Products were contaminated.

77.     Defendants thus violated New Jersey law by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Products were safe and suitable as a treatment for the symptoms related to dry eyes.

78.     Defendants made affirmative misrepresentations about the safety and quality of the Products that were not true, and they failed to disclose material facts regarding the design, manufacture, testing, packaging, and labeling of the Products, which mislead Plaintiff and Class members.

79.      Defendants knew, or should have known, that their conduct violated New Jersey law.

80.     Defendants owed Plaintiff and Class members a duty to disclose the true and unsafe nature of the Products.

81.     Defendants' misrepresentation of the true characteristics of the Products, their contaminated nature, was material to Plaintiff and Class members.

16

82.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class members, about the true, unsafe nature of the Products.

83.    Defendants' violations present a continuing risk to Plaintiff and Class members as well as to the general public, including public health.

84.    Thus, Defendants' unlawful acts and practices complained of herein affect the public interest.

85.    Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and failure to disclose material information.

86.    Defendants have an ongoing duty to all customers and the public to refrain from unfair and deceptive practices under New Jersey law.

87.    Plaintiff and Class members suffered ascertainable loss because of Defendants' deceptive and unfair acts and practices made in the course of Defendant's business.  Through its deceptive practices, Defendant has improperly obtained and retained money from Plaintiff.

88.    The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers, including Plaintiff, or to competition.

89.    The injury caused by Defendants' conduct could not reasonably have been avoided by Plaintiff and Class members because they did not know and could not have known that the Product was contaminated with the Bacteria.

90.    As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the Products, Plaintiff and Class members suffered economic damages.

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### (On Behalf of Plaintiff and the Class and Against All Defendants)

91.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

92.    Through their labeling, advertising, distribution, and contained in other materials put forth in the course of their regular business of the Product, Defendants made representations to Plaintiff and the Class concerning the function, operability, validity, safety, and contents of the Product.

93.    Defendants intended Plaintiff and Class Members to rely on the representations regarding the function, operability, validity, safety, and contents of the Product when purchasing the Product.

94.    Defendants' representations were material to Plaintiff and Class Members when deciding to purchase the Product.

95.    Defendants owe a duty to reasonable consumers, including Plaintiff and Class Members, to provide accurate and truthful information regarding the safety and potential contaminants, like the Pseudomonas Aeruginosa Bacteria, in the Product.

96.    Defendants did not practice reasonable care in the above-mentioned design, creation, production, distribution, marketing, labeling, and eventual sale of the Product as evidenced by the presence of the Pseudomonas Aeruginosa Bacteria in the Product.

97.    Defendants made these representations to guide consumers, such as Plaintiff and the Class, in the transactional process.

98.    Knowing that the safety of the Product is a material concern for consumers, Defendants knew that such representations would be relied upon by Plaintiff and the Class when purchasing the Product.

99.    Plaintiff and the Class would not have purchased the Product without such statements and representations made by Defendants regarding function, operability, validity, safety, and contents of the Product.

100.    Defendants intended that Plaintiff and the Class rely on the representations made by regarding the safety the Product, as no foreseeable customer would purchase dangerous contaminated eyedrops, thus directly shooting bacteria into their eyes.

101.    Defendants failed in their duty of care to provide truthful and accurate representations to consumers, including Plaintiff and Class Members, regarding the safety and quality of the Product.

102.    Plaintiff and Class Members reasonably relied upon Defendants' false representations and omissions to their detriment as she suffered economic damages by purchasing a dangerous and inoperable Product.

103.    Without Defendants' representations and omissions, Plaintiffs and Class Members would not have purchased the Product.

104.    By reason thereof, Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

105.    Due to Defendants' conduct, Plaintiff was damaged by Defendants in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

106.     Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' negligent misrepresentation of the Products.

### **THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class and Against All Defendants)**

107.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

108.     Plaintiff and the Class bestowed benefits upon Defendants in the form of monies that were paid in exchange for the Product, that were marketed and sold as safe to use, with no risk of contamination, or otherwise dangerous use.

109.     These benefits bestowed by Plaintiff and Class members were not a donation or otherwise gratuitous benefit to Defendant as these monies were given for the purchase of the Product.

110.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when Plaintiff and Class Members purchased the Product. In doing so, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

111.     Plaintiff and the Class paid money for Products that were properly functioning, Products' whose sole function was providing safe ocular lubrication and dryness relief. Instead, they received something entirely different and unusable given the inherently dangerous nature of such Products.

112.    As a result of Defendants' wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

113.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

114.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification (of which there is none), from the false and deceptive manufacturing, labeling, and marketing of the Products to Plaintiff and members of the Class.

115.    Defendants' retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

116.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

117.    Given the above, without reimbursement of the funds to Plaintiff and the Class, Defendants' retention of the funds is unjust.

118.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or unjust proceeds received by them, plus interest thereon.

119.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### FOURTH CAUSE OF ACTION
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

121.    Defendants, through its advertising and marketing expressly warranted that the Product was for the intended purpose to be used and safe for ocular lubrication, irritation, and dryness relief.

122.    Moreover, the description on the Product itself represents that the intended use of the Product was to be used as lubricate, refresh and moisturize the eye, thus, the Product was described being safe for use directly in the eye. Such statements constitute a promise that the Product will indeed provide safe and would not pose a significant risk to the consumer's health.

123.    Defendants breached this express warranty by providing a Product that was dangerous, unsafe for use, inoperable and could not be used as intended because it was contaminated with the Bacteria.

124.    Plaintiff and the other Class Members read and relied on these express warranties provided by Defendants in the description of the product and subsequent advertisements.

125.    Defendants breached their express warranties because the Product at issue is defective and unfit for its intended use as a safe to use eye lubricant due to the contamination with the Bacteria.

126.    Defendants knew, or should have known, that the Product did not conform to the express warranties and representations that the Product was fit for its intended purpose.

127.    Defendants' breach of express warranty proximately caused damages as it is foreseeable that a defective Product, incapable of delivering on their warranties, would deprive Plaintiff of her benefit of the bargain and monies paid for such Product.

128.    Plaintiff and the other Class Members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness and safety for use of the Product and are entitled to damages to be determined at trial.

129.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief thereunder for Defendants' failure to sell a Product conforming to their express warranties and resulting breach.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness For A Particular Purpose
### (On Behalf of Plaintiff and the Class and Against All Defendants)

130.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

131.    Defendants' Product was intended to be used as a lubricating eye drop to protect or provide relief from ocular conditions such as dryness, redness, and irritation. Thus, the Product was of a particular purpose.

132.    Defendants knew of this particular purpose as Defendants produced, marketed, sold, and advertised the Product as safely providing ocular dryness and irritation relief.

133.    Defendants knew that Plaintiff and Class Members relied on this promise of particularity as Defendants were aware of the assertations put forth regarding the quality and safety of the Product.

134.    Plaintiff relied on Defendants' skill, capability, and representations to provide such a specific and safe to use Product. Unfortunately, Defendants failed and provided Plaintiff and Class Members with an unsafe and unfit Product.

135.    Due to Defendants' Product being unfit for its intended purpose, Plaintiff and Class Members were damaged by Defendants because they were deprived the benefit of the bargain and loss of purchase price.

136.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## SIXTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and the Class)**

137.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

138.    Defendants sold the Products to Plaintiff, Class Members and other consumers.

139.    Plaintiff and Class Members are reasonable consumers who reasonably expected to use the Product for its intended purpose, given that the Product was sold to those seeking ocular lubrication, and Plaintiff is such a person suffering ocular dryness.

140.    Defendants are corporations that market themselves out to be a retailer and/or producer in the medicine and health industry, and Defendants both purposefully market themselves as a provider of such medicinal goods for the consuming public.

141.    Defendants presented the Product as a safe to use Product that provided relief for ocular issues such as dryness and irritation.

142.    The Product was not merchantable at the time of sale given that it did not safely provide ocular dryness relief, as marketed and promised by Defendants. This lack of merchantability is a breach of implied warranty.

143.    This breach both factually and proximately caused damages to Plaintiff through her loss of funds and the deprivation of her benefit of the bargain.

144.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting in breach.

**SEVENTH CAUSE OF ACTION**
**N.J. Stat. Ann. § 2A:58C-1**
**Strict Product Liability for Misrepresentation**
**(On Behalf of Plaintiff and the Class)**

145.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

146.    Defendants were engaged in the business of selling eye lubricating drops that are safe to use.

147.    Defendants misrepresented the material fact that its Product provided safe lubrication of the eye.

148.    This fact is material because it is the entire nature and purpose of the Product and Plaintiff and Class members would not have purchased the Product had they known of the true unsafe nature of the Product.

149.    Defendants' misrepresentations were made to the public at large and potential consumers through Defendants' advertising, marketing, and the Product's packaging.

150.    Plaintiff and Class members are people who reasonably expected to use the Product as marketed by Defendants. Plaintiff and Class members were reasonable in relying on Defendants' representations regarding the Product because they were the targeted consumers of the Product.

151.    Had Plaintiff and Class Members known the true and unsafe nature of the Product, Plaintiff and Class Members would not have purchased the Product.

152.    It is reasonably foreseeably that Plaintiff and Class members would be harmed by Defendants' misrepresentation.

153.    Plaintiff and Class members suffered damages due to Defendants' misrepresentation.

154.    Due to Defendants' conduct, Plaintiff was damaged by Defendants in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price that she may never get back.

155.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### EIGHTH CAUSE OF ACTION
#### Fraud
#### (On Behalf of Plaintiff and the Class)

156.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

157.    Defendants engaged in the development, manufacturing, design, labeling, marketing and sale of the Product.

158.    Defendants owed a duty to reasonable consumers, like Plaintiff and Class Members, to provide accurate, truthful, and complete information regarding the quality and safety of the Product.

159.    Defendants made a fraudulent misrepresentation of material fact because Defendants promised to provide Plaintiff and Class Members with a Product that would be safe to relieve ocular dryness and irritation. However, Defendants had knowledge and information that the representations made to Plaintiff and Class Members were false and misleading.

160.    The Product's intended purpose was to safely provide relief from ocular dryness and irritation, thus, any statements and representations relating to the safety and quality of the Product is material. Without such a promise of the safety and quality of the Product, Plaintiff and Class Members would not have purchased the Product.

161.    Had Plaintiff and Class Members known of the true unsafe, inoperable, defective, and potentially dangerous nature of the Product, Plaintiff and Class Members would not have purchased the Product.

162.    Defendants intended Plaintiff and Class Members to rely on Defendants' representations regarding the safety and quality of the Product.

163.    Plaintiff and Class Members relied on and were induced by Defendants' representations when purchasing the Product.

164.    Plaintiff and Class Members were justified and reasonable in relying on Defendants' representations as the true nature of the Product was not known to Plaintiff, and Defendants promised a Drug that would safely provide ocular relief.

165.    Plaintiff has suffered damages as a direct and proximate result of this justification as Plaintiff has lost out on her benefit of the bargain, lost funds stemming from her purchase price, has suffered emotional duress, and has been greatly inconvenienced by Defendants' inoperable Product.

166.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

### NINTH CAUSE OF ACTION
**Fraudulent Misrepresentation**
**(On Behalf of Plaintiff and the Class)**

167.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

168.    Defendants engaged in the development, manufacturing, design, labeling, marketing and sale of the Product.

169.    Defendants owed a duty to reasonable consumers, like Plaintiff and Class Members, to provide accurate, truthful, and complete information regarding the quality and safety of the Product.

170.    Defendants made a fraudulent misrepresentation of material fact because Defendants represented the Product was safe for its intended purpose of providing relief for ocular dryness and irritation, when, in fact, the Product was not fit for its intended purpose due to the Product being contaminated with the Pseudomonas Aeruginosa Bacteria

171.    The Product did not provide its intended and claimed relief and this assertion that the Product would provide such relief was the entire basis for Plaintiff's and Class Members' purchase.

172.    Plaintiff and Class Members relied on the representations made by Defendants as the promise of granting ocular dryness and/or irritation relief was the entire reason for her purchase of the Product.

173.    Plaintiff and Class Members were justified and reasonable in relying upon the above misrepresentation that Defendants' Product would provide relief from ocular dryness, pain, or irritation.

174.    Plaintiff's and Class Members' reliance on Defendants' representations resulted in damages as Plaintiff would not have purchased had they known of the contamination, thus losing the money related to such purchase, the Product.

175.    As a direct and proximate cause of Defendants' conduct, Plaintiff was damaged by Defendant in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

176.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

**TENTH CAUSE OF ACTION**
**N.J. Stat. Ann. § 2A:58C-4**
**Strict Liability: Failure to Warn**
**(On Behalf of Plaintiff and the Class and Against All Defendants)**

177.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

178.    Defendants manufactured, designed, labeled, distributed, and sold the Product in the scope of their businesses.

179.    Defendants knew or should have known that the Product was contaminated with a dangerous bacterium.

180.    At all times during the manufacturing, distribution, sale and use of the Product, the Product was in an unreasonably dangerous and defective condition because Defendants failed to provide consumers, including Plaintiff and Class Members, with adequate and proper warnings regarding the presence of Bacteria, and the dangers therein, within the bottles and/or packaging of the Product.

181.    Defendants failed to properly test, or adequately warn Plaintiff and Class Members of the risks of using the Product contaminated with Bacteria.

182.    Defendants knew that the risk of exposure to Bacteria was not readily recognizable to an ordinary consumer and that consumers would not inspect the Product for Bacteria.

183.    Defendants did not give adequate warnings to Plaintiff that the Product was contaminated with the Bacteria or about the dangers of the presence of Bacteria in the Product.

184.    Plaintiff and Class Members were justified in thei reliance on Defendants' labeling, packaging, marketing, promotion, advertising, and sale of the Product for use as safe to use artificial tears.

185.    Had Plaintiff and Class Members received notice or a warning that the Product was contaminated with the Bacteria, they would not have purchased and use such Product.

186.    Defendants' Product was defective because Defendants failed to perform proper adequate microbial testing on the Product, provide warnings of contaminates, and failed to conform to express factual representations upon which Plaintiff justifiably relied in choosing to use the Product.

187.    The contamination with the Bacteria made the Products unreasonably dangerous to consumers, such as Plaintiff, who could reasonably be expected to use such Product. As a result, the defect or defects were a direct cause of Plaintiff's injuries and damages.

188.    As a proximate result of Defendants' design, manufacture, packaging, labeling, marketing, sale, and distribution of the Product, Plaintiff was injured with severe pain, suffering, disability, impairment of vision, loss of enjoyment of life and comfort, and economic damages.

### <u>ELEVENTH CAUSE OF ACTION</u>
**Strict Liability: Manufacturing and/or Design Defect**
**(On Behalf of Plaintiff and the Class and Against All Defendants)**

189.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

190.    Defendants engaged in the development, manufacture, marketing, packaging, labeling, sale, and distribution of the Product in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

191.    Defendants caused the Product to enter the stream of commerce and to be sold through various online and brick and mortar retailers where consumers such as Plaintiff and Class Members purchased the Product.

192.    The Product reached consumers, including Plaintiff and Class Members, without any change in the condition in which it was manufactured and sold by Defendants and/or otherwise released into the stream of commerce.

193.    Plaintiff and Class members used the Product in the manner normally intended, recommended, and marketed by Defendants.

194.    The Product failed to perform safely when used by Plaintiff and Class Members in a reasonably foreseeable manner; that is, the presence of the Bacteria rendered the Products unfit for their intended purpose, unreasonably dangerous to consumers, and worthless.

195.    The Product contained a defect when they left the possession of Defendants. Specifically, the Product differs from Defendants' intended result because they were contaminated with the Bacteria, and Defendants failed to test the Product properly and adequately for the presence of bacteria before distributing it.

196.    Safer alternatives, including artificial tear products that do not contain harmful bacteria, have been readily available for decades.

197.    As a direct or proximate result of Defendant's manufacture, packaging, labeling, marketing, sale, and distribution of the Product, Plaintiff and Class Members suffered economic damages.

## TWELFTH CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

198.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

199.    Through their marketing, advertisements, and promises, Defendants created a contract with Plaintiff and Class members.

200.    Specifically, Plaintiff and Class members were to receive a product that was safe to use for the lubrication of the eye in exchange for the purchase price of Defendants' Product.

201.    Plaintiff and Class members performed their obligations under the contract through paying purchase price of the Product.

202.    Defendants failed to perform their obligation under the contract in that Defendants failed to provide a product that was safe to use for lubrication of the eye.

203.    Plaintiff and the Class have been damaged as a direct and proximate result of Defendants' breach.

204.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.


## THIRTEENTH CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class and Against All Defendants)

205.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

206.    All Defendants have a duty of reasonable care to Plaintiff and all other reasonable consumers to ensure its Products offered for sale was safe for its intended use and the Products labeling adequately warned consumers of any associated risks of using the Product.

207.    All Defendants also owed Plaintiff and all other consumers to not market, manufacture, design, produce, supply, sell and/or distribute an unsafe or dangerous Product that they knew, or should have known through the exercise of reasonable care and due diligence, was unsafe and unfit for its intended purpose due to the presence of the dangerous Bacteria Pseudomonas Aeruginosa.

208.    All Defendants breached this duty of care owed to Plaintiff and other consumers that the Product was safe for its intended use by placing into the stream of commerce a dangerous and inoperable Product.

209.    All Defendants' breach of this duty of care owed to Plaintiff and other reasonable consumers to design, produce, market, distribute, and sell a safe and operable Product caused damages to Plaintiff and Class Members.

210.    It was reasonably foreseeable to Defendants that Plaintiff and Class Members– as a reasonable consumer— would purchase Defendants' Product and would suffer an injury from purchasing the Product but not being able to use the Product due to the presence of the dangerous, and potentially deadly, Pseudomonas Aeruginosa Bacteria.

211.    Plaintiff and Class Members were economically injured and have suffered economic loss through Defendants' retention of the funds paid for when Plaintiff and Class Members purchased the Product without knowing that the Product was unsafe and inoperable for its intended use.

212.    Defendants' actions and inactions caused these injuries and damages to Plaintiff and Class Members, both factually and proximately.

213.    But for Defendants' faulty design, production, marketing, and sale of the dangerous inoperable Product, Plaintiff and the Class would not have been damaged.

214.    In addition, it is foreseeable that producing a dangerous, inoperable, unsafe, or otherwise ineffective Product would cause damages, as Plaintiff and the Class purchased the Products to relieve eye pain, dryness, and irritation, which is consistent with the intended use of the Product.

215.    Due to Defendants' conduct, Plaintiff and Class Members were damaged by Defendants because Plaintiff and Class Members have been deprived the benefit of the bargain and loss of purchase price.

216.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other relief this Court finds to be just and proper available thereunder for Defendants' negligence.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgement against Defendants as to each and every count, including:

    A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

    B.    An order enjoining Defendants from selling the Product;

    C.    An order enjoining Defendants from suggesting or implying that the Product is effective for their intended purpose of safely granting ocular dryness, irritation, or pain relief;

D.  An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E.  An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.  An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G.  An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H.  An order requiring Defendants to pay all actual, punitive, and statutory damages permitted under the counts alleged herein;

I.  An order awarding attorneys' fees and costs to Plaintiff and Class; and

J.  An order providing for all other such equitable relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 1, 2023

Respectfully Submitted,

**THE SULTZER LAW GROUP P.C.**

*/s/_____Philip Furia_____*
Philip Furia, Esq.
85 Civic Center Plaza Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: Furiap@thesultzerlawgroup.com

-AND-

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
        blake.abbott@poulinwilley.com